**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

# FILED

SEP 1 7 2010

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| (1) JAY D. LABADIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| (1) PROTEC FUEL MANAGEMENT, LLC, | ) | **10 CV – 5 8 7 CVE   FHM** |
| (2) PROTEC ENERGY PARTNERS, LLC, | ) | |
| (3) ANTOD CORP., | ) | |
| (4) TODD G. GARNER, and | ) | |
| (5) ANDREW GREENBERG, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, JAY D. LABADIE ("Labadie"), for his claims for relief against Defendants,

PROTEC FUEL MANAGEMENT, LLC ("Protec"), PROTEC ENERGY PARTNERS, LLC

("Protec Energy"), ANTOD CORP. ("Antod"), TODD G. GARNER ("Garner"), ANDREW

GREENBERG ("Greenberg") (collectively, "Defendants"), alleges and states as follows:

### Parties, Jurisdiction, and Venue

1.      Labadie is an individual residing in Tulsa, Tulsa County, Oklahoma.

2.      Protec is a Florida limited liability company with its principal place of business at

980 North Federal Highway, Suite 305, Boca Raton, FL 33432, and with operations and an

office in Tulsa, Oklahoma.

3.      Protec Energy is a Florida limited liability company with its principal place of

business at 980 North Federal Highway, Suite 305, Boca Raton, FL 33432.  Upon information

and belief, Garner and Greenberg formed Protec Energy in part for the purpose of hiding,



diverting, and misappropriating assets of Protec and to hinder, delay, and defraud creditors, including Labadie.

4.       Antod is a Florida corporation with its principal place of business at 980 North Federal Highway, Suite 305, Boca Raton, FL 33432. Upon information and belief, Garner and Greenberg formed Antod in whole or in part for the purpose of hiding, diverting, and misappropriating assets of Protec and to hinder, delay, and defraud creditors, including Labadie.

5.       Garner is an individual residing in Florida.  Garner is a co-owner and managing member of Protec and Protec Energy, as well as the President and a Director of Antod.

6.       Greenberg is an individual residing in Florida.  Greenberg is a co-owner and managing member of Protec and Protec Energy, as well as the Secretary and a Director of Antod.

7.       This Court possesses jurisdiction of Labadie's claims pursuant to 18 U.S.C. § 1961 *et seq.*, 18 U.S.C. § 1964(c), 28 U.S.C. §§ 1331, 1332(a), and 1367(a).

8.       Venue is proper in this Court pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

### General Allegations

9.       Greenberg and Garner founded Protec to market and trade physical energy products and their financial derivatives, including refined petroleum products, natural gas, ethanol, bio-diesel, propane and liquids.

10.      Labadie is an experienced energy trader with 19 years of experience in the oil and gas industry trading physical products and derivatives of natural gas.

-2-

11.     From May 2000 until August 28, 2007, Labadie served as the Director of Wholesale Products and then the Director of Wholesale Marketing at OG&E Energy Corporation ("OG&E"), where he also served as a member of the Executive Management Team.

12.     In the spring of 2007, Garner and Greenberg began contacting and recruiting Labadie to leave his employment with OG&E and begin working for Protec in order to launch a Tulsa, Oklahoma office for Protec and help grow Protec's business nationwide.

13.     On numerous occasions over the next several months, Garner and Greenberg continued to contact and recruit Labadie communicating various representations and promises to entice and induce Labadie to leave his lucrative position at OG&E and join Protec. Among other things, Garner and Greenberg, from Florida, contacted Labadie, in Oklahoma, by telephone and promised Labadie an opportunity to make significantly more money with Protec than Labadie would otherwise make with OG&E, including an opportunity to earn an ownership interest in Protec and the ability to receive substantial bonuses or commissions on a monthly basis, rather than annually as he had received with OG&E. Garner and Greenberg also represented that Protec was a growing company that would swell to 20 to 30 employees in the near future.

14.     In August 2007, Greenberg and Garner contacted Labadie by telephone from Florida and made the following promises to Labadie in exchange for Labadie leaving OG&E and entering into employment with Protec:

     a.     Protec would pay Labadie a non-refundable monthly base draw of $12,500.00.

     b.     During the first year of employment, Protec would pay Labadie a monthly bonus or commission in the amount of 50% of the net profit of all physical and financial

transactions Labadie completed relating to natural gas and 30% of the net profit of all physical and financial transactions completed related to petroleum products.

        c.     During the second and each subsequent year of employment, Protec would pay Labadie a monthly bonus or commission in the amount of 30% of all physical and financial transactions Labadie completed relating to both natural gas and petroleum products.

        d.     Protec would grant Labadie a 5% membership or equity interest in Protec upon Labadie's fulfillment of certain conditions with such interest vesting upon Labadie's completion of four years of employment with Protec.

        e.     Protec would reimburse Labadie for business expenses.

        f.     Labadie would be entitled to four weeks of paid vacation annually.

        g.     Protec would provide a 401(k) retirement plan in which Labadie would be allowed to participate and in which Protec would make periodic non-matching contributions by payroll deduction.

     15.     On about August 28, 2007, in reasonable reliance upon the terms of the offer, promises, and representations made by Garner, Greenberg and Protec, Labadie resigned his employment with OG&E and commenced employment with Protec in Tulsa, Oklahoma.

     16.     By leaving OG&E, Labadie forfeited a generous salary, substantial earned bonuses of $50,000 to $70,000 and future bonus opportunities, restricted stock and stock options. Labadie also forfeited OG&E's generous employee benefits, including but not limited to a fully matched 401(k) plan and health and dental plans superior to those offered by Protec. As a result of communications during recruitment of Labadie, Protec, Garner, and Greenberg knew Labadie

-4-

would forfeit such compensation and benefits in relying upon the promises of Protec, and, in fact, Garner described the OG&E perquisites as the "golden handcuffs" that kept Labadie from realizing his full income potential – the potential that Garner and Greenberg promised he would attain at Protec.

17.     During the recruitment of Labadie, Garner, Greenberg, and Protec concealed from Labadie the true financial condition of Protec and Protec's inability or unwillingness to fulfill its promises.

18.     Throughout his employment with Protec, Labadie worked diligently and faithfully from Protec's Tulsa, Oklahoma office to fulfill his obligations to Protec. As a result of Labadie's efforts, Labadie succeeded in substantially expanding Protec's national operations and the volume of Protec's revenue.

19.     Throughout his employment with Protec, Labadie fulfilled all conditions precedent to earning and receiving payment of monthly bonuses or commissions and annual equity interests in Protec. However, despite Labadie's repeated inquiries about and demands for payment of unpaid monthly bonuses or commissions for 2008, 2009 and 2010, Protec failed or refused to pay Labadie any of the earned and due monthly bonuses or commissions.

20.     Instead, Protec, Garner, and Greenberg repeatedly promised Labadie that they would pay all earned and due bonuses or commissions. For example, Labadie first began to inquire about and make demand for payment about the end of the first quarter and second quarter of 2008. However, Garner, Greenberg and Protec fabricated excuses for its failure to fulfill its promises.

21.     In or about March 2009, at which time Labadie had not received any of his earned and past due bonuses or commissions, Garner and Greenberg induced Labadie to remain with Protec by promising and representing that they would pay Labadie all sums owed to him upon receipt of certain receivables and other sums, such as an expected tax refund from the Internal Revenue Service totaling $1,000,000.  Garner promised and represented to Labadie: "I've got your back" and "I'll take it to my grave. You have nothing to worry about."

22.     In or about the second week of September 2009, after Garner and Greenberg had announced to Protec Employees the receipt of the IRS refund, Labadie met with Greenberg and Garner regarding Labadie's unpaid bonuses or commissions and insisted upon payment due to the increasing economic and emotional hardship being inflicted upon Labadie, his wife, and his children.  Garner and Greenberg represented that Protec could not pay Labadie all sums it admittedly owed Labadie.  However, to induce Labadie to remain with Protec, Greenberg and Garner promised and agreed to pay Labadie a lump sum of $35,000.00 toward the entire balance of earned and due bonuses or commissions within the week.  As further inducement for enticing Labadie to remain with Protec, Garner and Greenberg also promised and agreed to immediately accelerate the vesting of Labadie's 5% interest in Protec, thus making Labadie a minority member and owner of Protec effective September 2009.  In reliance upon the promises and assurances, Labadie remained with Protec. Though Labadie remained with Protec, Garner, Greenberg, and Protec failed or refused to issue the promised partial payment of $35,000.00 to Labadie.  Garner, Greenberg, and Protec also failed or refused to memorialize the agreement regarding Labadie's equity interest.

23.     In or about the third week of November 2009, Labadie, while in California, called Garner in Florida and inquired again about payment of earned and due monthly bonuses or commissions, emphasizing to Garner the extreme financial, physical, and emotional hardship being imposed upon his family.  Garner again admitted that Protec owed Labadie the unpaid bonuses or commissions and promised to make a payment to cover an immediate expense Labadie had by December 2009.  However, Labadie did not receive the promised payment.

24.     In or about December 2009, for the purpose of inducing Labadie to remain with Protec, Garner and Greenberg promised to make additional payments to Labadie in the amount of $10,000 per month to pay a portion of the bonus or commission that had been unpaid and due to Labadie. However, Labadie only received $2,000 per month over the next several months, but the payments ceased after only about $12,000.00 leaving a substantial balance remaining due.

25.     Between January and August 2010, Labadie called on a weekly basis from Oklahoma to Garner and Greenberg in Florida to inquire about payment and memorializing the equity transfer.  Garner and Greenberg continued to make promises and representations to pay Labadie and take formal steps to transfer the accelerated 5% membership interest in Protec.

26.     Labadie prepared detailed calculations of the transactions on which his earned and due bonuses or commissions were to be determined pursuant to the agreement with Protec.  The calculations reflected amounts earned and due for 2009 and 2009.  Copies of the calculation sent to Protec are attached hereto as Exhibit "A" and "B".  Labadie sent the spreadsheets to Garner, Greenberg, and Protec and insisted upon full payment.  Labadie sent the spreadsheets to Garner, Greenberg and Protec and insisted upon full payment.  The calculations at the bottom of the

-7-

spreadsheets starting with "Per Unit Margin:" have been added by Labadie, but were not included when transmitted to Garner and Greenberg.

27.     On about July 17, 2010, Greenberg, from Florida, called Labadie, in Oklahoma, and induced Labadie to remain with Protec by promising and representing that Protec would pay Labadie all sums owed as reflected on the spreadsheets prepared by Labadie, including amounts due for 2010 transactions, upon receipt of an expected capital infusion from a third-party, which, according to Greenberg, was to happen as soon as July 19, 2010.  Greenberg represented that "if this [deal] doesn't go through, I get hit by lightning [sic]."

28.     During the same conversation, Greenberg also admitted, promised, and represented as follows: "What's happening is for Jay D. Labadie and family [after the anticipated closing with the investor] is that we there will be capital to take care of your needs.  We'll take care of the bonus and memorialize the percentage – which is getting memorialized next month anyway – I mean, you're there anyway, it doesn't matter." Greenberg also admitted: "I know exactly what your numbers are.  I know what your contribution is, we all do…there has been absolutely no question - I've been trying to reiterate that – no question what you have made for the company, what is owed on the formulas we agreed to...."

29.     Garner, Greenberg, and Protec never fulfilled their repeated promises to pay Labadie all sums due and owing for bonuses or commissions and never performed their promise to transfer the 5% membership interest to Labadie, or to maintain a 401(k) retirement plan.

30.     Garner and Greenberg made their numerous promises and representations without intent to fulfill them or with knowledge of their falsity or with reckless disregard as to whether the statements were true.

-8-

31.    In reliance upon the repeated promises, representations, and assurances of Garner and Greenberg, Labadie remained employed with Protec and continued to work diligently and loyally for the benefit of Protec and to his own detriment.

32.    Garner and Greenberg directed Protec to cancel its sponsorship of the 401(k) retirement plan in breach of its agreement with Labadie all while, upon information and belief, Greenberg and Garner where directing Protec to contribute large sums to their own retirement plans and life insurance policies.  After canceling the 401(k) plan, Protec made distribution of the plan assets to the beneficiaries, including Labadie, forcing Labadie to incur an early withdrawal penalty in breach of the agreement with Labadie.

33.    On August 29, 2010, Labadie called Garner and resigned his employment with Protec.  In response, Garner tried to persuade Labadie to reconsider and remain with Protec.

34.    On the same day, August 29, 2010, Labadie sent a letter to Garner and Greenberg, formalizing his resignation and making demand for all amounts due and owing pursuant to the agreement between Labadie and Protec.

35.    Upon information and belief, Garner and Greenberg have been engaged in a scheme to convert and misappropriate assets of Protec for their own unjust enrichment and illicit personal gain and to the detriment of creditors such as Labadie.

36.    In contrast, Garner, Greenberg, and Protec caused Labadie and his family to suffer due to non-payment of sums owed for services rendered.  Among other things, Labadie liquidated approximately $57,000.00 in investments to meet living expenses for his family of six. Labadie had to make an early withdrawal of funds in his IRA of approximately $39,000.00 and incurred penalties for doing so in order to meet living expenses.  Additionally, Protec's refusal to

pay forced Labadie to withdraw his youngest daughter from the private school she had been attending for years resulting in substantial emotional distress, and forced Labadie's oldest daughter to pursue a student loan to pay for college, which also exacerbated the emotional distress of the Labadies. Labadie's wife suffered a serious health condition and consequential emotional distress, and Protec's failure to pay sums owed to Labadie placed additional financial pressure upon and caused further extreme emotional distress to Labadie, his wife, and his children. Garner and Greenberg were aware of the financial, marital, and family distress they were causing Labadie by refusing to pay substantial sums owed, but with callous indifference and reckless disregard for the rights and interests of Labadie they continued to misappropriate and siphon off Protec assets for their own unjust enrichment and to support their indulgent lifestyles to the detriment of Labadie and his family.

37.     On September 3, 2010, Garner sent a threatening text message to Labadie, declaring: "I will warn [you], don't mess with my business. If [you] think this last year was tough on [you] just wait don't screw with me."

38.     Garner sent the threatening email with the intent to exacerbate greatly the extreme emotional distress and anxiety being inflicted upon Labadie and his family, and the email has had the desired effect, or Garner did so recklessly with callous indifference to the rights and interests of Labadie, his wife, and children causing Labadie to fear for himself and his family.

39.     Also on September 3, 2010, Garner, Greenberg, and Protec directed Protec's attorney to begin to act on Garner's intimidation tactics by having the attorney issue a threatening letter to Labadie, falsely representing and claiming that Protec had paid Labadie. The letter confirms Garner and Greenberg had no intent to honor or fulfill their promises and

obligations to pay Labadie or convey Labadie's membership interest in Protec and such false promises were made solely to induce Labadie to stay with Protec and continue to make money to support the lavish lifestyle of Garner and Greenberg.

## FIRST CLAIM FOR RELIEF
### (Breach of Employment Contract)

40.     Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

41.     Labadie accepted the promises made to him by Garner and Greenberg and entered into a contract of employment with Protec.

42.     Labadie fulfilled all of his obligations under the contract and satisfied all conditions precedent to the performance of all of Protec's obligations under the contract.

43.     Protec breached the contract by failing to pay Labadie bonuses or commissions earned and due each month from August 2007 through August 2010.

44.     Protec breached the contract by failing to maintain an active 401(k) or similar retirement plan and by causing Labadie to incur penalties due to the plan's cancellation.

45.     Protec breached the contract by failing to grant Labadie a 5% membership or equity interest in Protec on an accelerated basis effective September 2009.

46.     Protec breached the contract by failing to pay Labadie for all earned and due vacation pay.

47.     Protec breached the contract by failing to pay Labadie all expenses that were reimbursable pursuant to the contract.

48.     Protec's breach of the contract has caused Labadie to suffer actual, incidental and consequential damage in an amount to be proven at trial.

-11-

### SECOND CLAIM FOR RELIEF
### (Violation of Oklahoma Protection of Labor Act, OKLA. STAT. tit. 40, § 165.1 *et seq.*)

49.      Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

50.      Protec is an employer within the meaning of and covered by the Oklahoma Protection of Labor Act as a result of employing Labadie to perform labor and services within the State of Oklahoma.

51.      Labadie was an employee of Protec within the meaning of and covered by the Oklahoma Protection of Labor Act and was permitted to work for and by Protec within the State of Oklahoma.

52.      During Labadie's employment with Protec, Labadie earned wages for labor or services rendered, including bonuses or commissions, vacation pay, and other similar advantages agreed upon between the Labadie and Protec, which have been due and owing but which Protec has failed or refused to pay despite Labadie's repeated demand.

53.      Additionally, during the course of employment Protec made unauthorized deductions from Labadie's salary or draw.

54.      As a result of Protec's failure or refusal to pay wages that Protec admits is due and owing to Labadie, Labadie has suffered damage in an amount to be proven at trial, which for 2008 and 2009 includes unpaid bonuses or commissions totaling $639,451.64 and accrued, unused vacation pay totaling $4,038.46; and unpaid bonuses or commissions for 2010 in an amount to be determined, as well as accrued, unused vacation pay totaling $8,076.92; plus liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon

-12-

which such failure shall continue after the day the wages were earned and due or in an amount equal to the unpaid wages, whichever is smaller, including reasonable attorney fees and costs.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Recruitment)

55.     Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

56.     In August 2007, Garner and Greenberg made false promises and representations to Labadie for the purpose of fraudulently recruiting Labadie and fraudulently inducing Labadie to resign his lucrative position with OG&E and enter into a contract of employment with Protec.

57.     At the time Garner and Greenberg made the promises and representations to Labadie, they were not true and Garner did not believe them to be true, or Garner made them with reckless disregard for their truth or falsity, or Garner made them with no intention of performing the promises.

58.     Garner and Greenberg fraudulently concealed from Labadie the fact that Protec could not or would not fulfill its promises.

59.     Garner and Greenberg fraudulently concealed from Labadie the fact that Protec suffered cash flow problems.

60.     Garner and Greenberg fraudulently concealed from Labadie the pattern and practice of fraudulently recruiting others to join Protec without the intent to pay such prior recruits all sums due and owing for services rendered.

61.     Garner and Greenberg fraudulently concealed from Labadie that Garner and Greenberg were engaged in a scheme to defraud recruits and employees by converting corporate funds to support their own lavish lifestyles at the expense of the recruits and employees who

-13-

were deprived of sums due and owing for labor and services rendered while Garner and Greenberg paid themselves exorbitant, unjustified compensation, benefits, and other perks and otherwise converted and misappropriated corporate assets for their own unjust enrichment.

62.     Labadie reasonably relied to his detriment upon the false promises and representations of Garner and Greenberg, as well as Garner and Greenberg's fraudulent concealment of material facts, when he resigned his employment with OG&E and entered into an employment contract with Protec.

63.     As a result of the fraud of Garner, Greenberg and Protec, Labadie suffered damages in an amount to be proven at trial, including but not limited to loss of all compensation and benefits he would have earned and enjoyed had he remained employed with OG&E, as well as loss of compensation and benefits owed but not paid by Protec.

64.     Because Garner, Greenberg and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Inducement to Remain with Protec)

65.     Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

66.     During the course of Labadie's employment with Protec, Garner, Greenberg, and Protec made false promises and representations to and fraudulently concealed material facts from Labadie with the purpose and intent of inducing Labadie to remain employed with and continue working for Protec.

-14-

67.     At the time the promises and representations were made, they were not true and Garner, Greenberg, and Protec did not believe them to be true or made them with reckless disregard for their truth or falsity, or made them without any intent to perform or fulfill their promises.

68.     Labadie reasonably relied to his detriment upon the false promises and fraudulent concealment of Garner, Greenberg, and Protec by remaining employed with and continuing to work for Protec.

69.     As a result of the fraud, Labadie has suffered damages in an amount to be proven at trial, including loss of principal, interest, and lost opportunity costs.

70.     Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### FIFTH CLAIM FOR RELIEF
### (Civil RICO against Garner and Greenberg)

71.     Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

72.     Garner and Greenberg wrongfully conspired with one another and engaged in a pattern of racketeering activities, as defined in 18 U.S.C. § 1961, with the intent to and for the illegal purpose of defrauding Labadie.

73.     Garner and Greenberg, in combination, conspired to defraud Labadie in violation of 18 U.S.C. § 1962(d).

74.     In perpetuation of the conspiracy to defraud Labadie and other victims, Garner and Greenberg were each employed by or associated with an enterprise, within the meaning of

-15-

18 U.S.C. § 1961(4), engaged in a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c).

75.     In perpetuation of their scheme to defraud Labadie and other victims, Garner and Greenberg used multiple telephone, email, and facsimile transmissions in interstate commerce in violation of 18 U.S.C. § 1343.

a.     As alleged herein, Garner and Greenberg made multiple false or fraudulent representations and promises by telephone, email and facsimile across state lines.

b.     Garner and Greenberg made the false or fraudulent representations and promises with knowledge of their falsity.

c.     The false or fraudulent representations and promises were made with the intent to defraud Labadie.

d.     Labadie justifiably relied upon the false or fraudulent representations and promises and was damaged as a result.

76.     In violation of 18 U.S.C. § 1341, Garner and Greenberg used the U.S. Mail or a private and commercial interstate carrier to inform Labadie by letter dated September 9, 2010 that Labadie had received his last pay check, implying that he would not receive any of his earned and due bonuses or commissions earned, and that he would not be receiving equity interest he was promised and that he would not be receiving accrued, unused vacation pay or outstanding expense reimbursements. Upon information and belief, Garner and Greenberg used the U.S. Mail or a private and commercial interstate carrier to receive payments to the enterprise

-16-

from various sources periodically, such payments being an essential step in the plot to profit from the scheme to defraud Labadie.

77.     Garner, by way of his correspondence to Labadie on September 3, 2010, in violation of 18 U.S.C. §1951, threatened violence to the person and property of Labadie in furtherance of the scheme and enterprise to affect commerce.

78.     The foregoing conduct constituted a pattern of racketeering activities affecting interstate commerce, were designed to harm multiple parties, including Labadie, and were effectuated by Garner and Greenberg in violation of 18 U.S.C. § 1962(c).

79.     As a result of the RICO violations, Labadie suffered outrage and severe economic damage, plus attorney fees wrongfully sustained.

80.     Labadie is a person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 and may sue in this Court and recover threefold the damages sustained and the costs of this suit, including reasonable attorney's fee pursuant to 18 U.S.C. § 1964(c).

81.     The racketeering activity of the Defendants presents the potential to injure other persons or entities. Labadie is only the latest victim in a continuing string of such racketeering activity by one or more of the Defendants, a course of conduct spanning many years, which threatens to injure future victims, as shown below:

      a.     Upon information and belief, over a period of approximately the last three years ending in or about August 2010, Garner and Greenberg engaged in substantially similar racketeering conduct to avoid paying agreed compensation to David Carey, a former employee.

-17-

b.     Upon information and belief, over a period of approximately the last three years, Garner and Greenberg is engaging in substantially similar racketeering conduct to avoid paying agreed compensation to Steve Walk, a current employee.

c.     Upon information and belief, over a period of approximately the last three years, Garner and Greenberg is engaging in substantially similar racketeering conduct to avoid paying agreed compensation to Karl Doenges, a current employee.

### SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

82.    Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

83.    Garner and Greenberg made material misrepresentations and omitted material existing facts during their recruitment of Labadie, and in their efforts to ensure that Labadie remain with Protec.

84.    Garner and Greenberg reasonably should have known when it made those representations that they were false, and Garner and Greenberg reasonably should have known that Labadie would rely upon them.  Labadie in fact relied on those representations to his detriment.

85.    As a direct result of Garner and Greenberg's above-described negligent misrepresentations Labadie has been damaged.

86.    Because Garner, Greenberg, and Protec acted with awareness of the hazard and of its excessiveness, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## SEVENTH CLAIM FOR RELIEF
### (Constructive Fraud)

87.　　Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

88.　　Garner, Greenberg, and Protec occupied a fiduciary or special relationship with Labadie by virtue of Labadie's employment relationship and/or by virtue of Labadie's equity ownership or membership interest in Protec.

89.　　As a result of their fiduciary or special relationship with Labadie, Garner, Greenberg, and Protec owed Labadie a duty of care, loyalty, good faith, and fair dealing.

90.　　By virtue of the acts and omissions of Garner, Greenberg, and Protec set forth in this Complaint, Garner, Greenberg, and Protec breached their duties owed to Labadie.

91.　　As a result, Garner, Greenberg, and Protec gained an advantage to the detriment of Labadie by misleading Labadie to his prejudice, even if done by Garner, Greenberg, and Protec without an actually fraudulent intent.

92.　　Because Garner, Greenberg, and Protec breached such duties with reckless disregard for the rights of Labadie and his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Transfer)

93.　　Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

94.　　Upon information and belief, Protec has made multiple transfers of assets to Garner, Greenberg, Protec Energy, Antod, and other persons or entities.

-19-

95.     Upon information and belief, the transfers were made with the actual intent to hinder, delay, or defraud Labadie and other creditors of Protec.

96.     Labadie is entitled to an Order of this Court avoiding the transfers to the extent necessary to satisfy Labadie's claim, an Order of attachment or other provisional remedy against the assets transferred or other property of Garner, Greenberg, Protec Energy and Greenberg, injunctive relief prohibiting further disposition by Protec, Garner, Greenberg, Protec Energy, and Antod, and the appointment of a receiver to take charge of the asset transferred or other property of the transferees.

97.     Because Garner, Greenberg, and Protec breached such duties with reckless disregard for the rights of Labadie and his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## NINTH CLAIM FOR RELIEF
### (Constructive Fraudulent Transfer)

98.     Labadie incorporates herein by reference the allegations contained in each of the preceding paragraphs.

99.     Upon information and belief, Protec has made multiple transfers of assets to Garner, Greenberg, Protec Energy, Antod, and other persons or entities.

100.    Labadie became a creditor of Protec prior to the time the transfers were made, and, upon information and belief, Protec did not receive reasonably equivalent value in exchange for the transfers from Protec and Protec was either insolvent at the time of the transfer or became insolvent as a result of one or more of the transfers to Garner, Greenberg, Protec Energy or Antod.

101.     Garner, Greenberg, Protec Energy and Antod are all insiders of Protec within the meaning of the uniform fraudulent transfer act. If the transfers were made on an antecedent debt to Garner, Greenberg, Protec Energy and Antod, then, upon information and belief, the transfers, occurring after Labadie's claim arose, were made when Protec was insolvent and Garner, Greenberg, Protec Energy and Antod had reasonable cause to believe that Protec was insolvent.

102.     Upon information and belief, Protec's transfers were made to Garner, Greenberg, Protec Energy and Antod without receiving reasonably equivalent value in exchange for the transfers and Protec was engaged or about to engage in business with Labadie or another creditor for which the remaining assets of the debtor were unreasonably small in relation to the business with Labadie, or were made when Protec intended to incur, or believe or reasonably should have believed that Protec would incur, debts beyond its ability to pay as they became due.

103.     Labadie is entitled to an Order of this Court avoiding the transfers to the extent necessary to satisfy Labadie's claim, an Order of attachment or other provisional remedy against the assets transferred or other property of Garner, Greenberg, Protec Energy and Greenberg, injunctive relief prohibiting further disposition by Protec, Garner, Greenberg, Protec Energy, and Antod, and the appointment of a receiver to take charge of the asset transferred or other property of the transferees.

104.     Because Garner, Greenberg, and Protec breached such duties with reckless disregard for the rights of Labadie and his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

-21-

## TENTH CLAIM FOR RELIEF
### (Conversion)

105.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

106.    Labadie had the right to receive timely and full payment of certain bonuses or commissions that he earned and that were due from month to month based on the profits Labadie generated for the benefit of Protec.

107.    Labadie had the right to expect that Protec would not make unauthorized deductions from Labadie's salary or monthly draw, including the unauthorized deduction for a 401(k) administrative fee that was deducted after the 401(k) plan had dissolved.

108.    Labadie had the right to expect that Protec would pay his reimbursable business expenses and pay Labadie for any accrued but unused vacation time.

109.    Labadie had the right to expect that Protec would fulfill its promise to convey to Labadie a 5% membership interest in Protec when Protec promised to accelerate the vesting of the interest in September 2009.

110.    Garner, Greenberg, and Protec have intentionally prevented Labadie from having access to, possessing, using, or otherwise enjoying the benefit of the above-described property without Labadie's consent and have wrongfully exerted dominion and control over and have converted each such asset for its own unjust enrichment, ulterior purposes, use, and enjoyment to the detriment of Labadie's rights and interests.

111.    As a result, Labadie has suffered damages in an amount to be proven at trial.

112.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## ELEVENTH CLAIM FOR RELIEF
### (Breach of Implied Covenant and Good Faith and Fair Dealing)

113.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

114.    Garner, Greenberg, and Protec owed Labadie an implied duty to deal with him fairly and in good faith in connection with its contract of employment with Labadie and its agreement to accelerate the vesting of Labadie's membership interest in Protec.

115.    The acts and omissions of Garner, Greenberg, and Protec set forth in this Complaint constitute a breach of the implied duty of good faith and fair dealing.

116.    As a result, Labadie has suffered and will continue to suffer damages in an amount to be proven at trial.

117.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

## TWELFTH CLAIM FOR RELIEF
### (Breach of Employment-Related Fiduciary Duties)

118.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

119.    As a result of the special or fiduciary relationship between Labadie and Protec, Garner, and Greenberg, Defendants owed Labadie fiduciary duties of care and loyalty.

-23-

120.    Defendants breached their fiduciary duties to Plaintiff.

121.    As a result, Labadie has suffered and will continue to suffer damages in an amount to be proven at trial.

122.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### THIRTEENTH CLAIM FOR RELIEF
### (Breach of Ownership-Related Fiduciary Duties)

123.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

124.    As a result of Labadie's prospective and actual ownership interest in Protec, Garner, Greenberg, and Protec owed fiduciary duties of care and loyalty to Labadie.

125.    Defendants breached their fiduciary duties owed to Labadie.

126.    As a result, Labadie has suffered and will continue to suffer damages in an amount to be proven at trial.

127.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### FOURTEENTH CLAIM FOR RELIEF
### (Civil Conspiracy)

128.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

129.    Garner and Greenberg had a meeting of the minds and acted in concert to induce Labadie to work for Protec by fraudulently promising Labadie a compensation and equity interest in Protec with no intention of performing such promises.

130.    Garner and Greenberg had a meeting of the minds and acted in concert to induce Labadie to continue working for Protec by making multiple fraudulent statements and false promises.

131.    As a result, Labadie has suffered and will continue to suffer damages in an amount to be proven at trial.

132.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### FIFTEENTH CLAIM FOR RELIEF
#### (Negligent Infliction of Emotional Distress)

133.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

134.    Garner, Greenberg, and Protec owed a duty of care to Labadie and his known dependents.

135.    By virtue of the acts and omissions of Garner, Greenberg, and Protec set forth in this Complaint, Garner and Greenberg breached the duty of care owed to Labadie and his known dependents.

136.    As a result, Labadie and his dependents have suffered and will continue to suffer damages, including extreme and severe emotional distress, in an amount to be proven at trial.

-25-

137.    Because Garner, Greenberg, and Protec acted with awareness of the hazard and of its excessiveness, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### SIXTEENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

138.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

139.    In the past year, Labadie had endured the untimely death of his pastor, the death of his father-in-law and his wife's serious health emergency.

140.    After Labadie's resignation from Protec, Garner sent an email to Labadie stating: "I will warn [you], don't mess with my business. If [you] think this last year was tough on [you] just wait don't screw with me." In the context in which it was written, this threat was designed to threaten the health and lives of Labadie and Labadie's family and friends.

141.    Garner's action in the setting in which it occurred when combined with all of the forgoing acts and omissions complained of herein, were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

142.    Garner and Greenberg intentionally or recklessly caused severe emotional distress to Labadie beyond that which a reasonable person could be expected to endure.

143.    As a result, Labadie and his dependents have suffered and will continue to suffer damages, including extreme and severe emotional distress, in an amount to be proven at trial.

144.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights and the rights of his family, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### SEVENTEENTH CLAIM FOR RELIEF
### (Tortious Interference with Business Relations)

145.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

146.    Upon information and belief, Protec, by way of its employees and agents, and Garner and Greenberg individually, have been contacting parties with which Labadie has current or prospective contractual or business relationships to disparage Labadie and mislead or otherwise convince these parties not to do business with Labadie.

147.    Protec, Garner and Greenberg, by way of such conduct, have and continue to intentionally and improperly interfered with Plaintiffs' current and prospective contractual relations with third parties.

148.    As a result, Labadie has suffered and continue to suffer pecuniary harm resulting from the loss of the benefits of the current and prospective contractual relations.

149.    Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### EIGHTEENTH CLAIM FOR RELIEF
### (Slander and Slander per Se)

150.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

151.     Upon information and belief, Protec, by way of its employees and agents, and Garner and Greenberg individually, have been uttering false, derogatory, misleading and disparaging statements about Labadie.

152.     As a result of the false, derogatory, misleading and disparaging statements made by Protec, Greenberg and Garner, Labadie has suffered and continues to suffer damages.

153.     Upon information and belief, Protec, by way of its employees and agents, and Garner and Greenberg individually have made statements to third parties and those statements are such that they would tend to injure Labadie in his trade or business because the statements relate to Labadie's reputation or qualification in his trade or business or because the statements made about Labadie have a natural tendency to lessen Labadie's profits in his trade or business.

154.     Because Garner, Greenberg, and Protec acted intentionally and with malice toward Labadie or with reckless disregard for his rights, Labadie is entitled to an award of punitive damages pursuant to OKLA. STAT. tit. 23, § 9.1.

### NINTEENTH CLAIM FOR RELIEF
#### (Constructive Trust and Equitable Lien)

155.     Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

156.     Defendants have possession of monies belonging to Labadie and property purchased with funds belonging to Labadie as a result of wrongful conduct of Defendants.

157.     The conduct of Defendants warrants the impression of a constructive trust on all monies, records and property, regardless of whatever kind or character, belonging to Labadie, regardless of which Defendant holds the property, records or monies, and a constructive trust and

-28-

equitable lien upon all property held, in whole or part, by Defendants, financed in whole or part with funds belonging to Labadie, as a result of the wrongful conduct of Defendants.

## TWENTIETH CLAIM FOR RELIEF
### (Equitable Disgorgement/Accounting)

158.   Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

159.   Labadie is entitled to an accounting by Defendants regarding all receipts and disbursements of Protec, Protec Energy and Antod, from August 28, 2007 to date.  Additionally, Labadie is entitled to an accounting of all assets of Garner and Greenberg acquired any time subsequent to August 28, 2007.  Labadie is entitled to an accounting of any and all financial transactions or transfers of monies between the Defendants.

160.   Labadie is entitled to an equitable disgorgement for monies and other property converted by Defendants.

## TWENTY-FIRST CLAIM FOR RELIEF
### (Preliminary and Permanent Injunctive Relief and Appointment of Receiver)

161.   Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

162.   Defendants have converted Labadie's property and assets, made unauthorized use of the same, and have threatened to interfere intentionally and improperly with Labadie's current and prospective contractual relations with third parties.

163.   Defendants' continued and unauthorized possession of Plaintiffs' property and Defendants' threatened intentional and improper interference with Plaintiffs' current and

prospective contractual relations with third parties has caused and will cause Plaintiffs irreparable harm for which no adequate remedy at law exists.

164.    Plaintiffs are entitled to the following temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, jointly and severally, from:

a.  Withholding, secreting, or exercising ownership or control over property belonging to Labadie or property for which a constructive trust may be imposed to satisfy any judgment that Labadie may obtain including, but not limited to, cash, certificates of deposit, stocks and bonds, accounts receivable, deposits, inventory, federal excise tax and credits receivable, property and equipment, equity interests.

b.  Disposing of fraudulently transferred assets or any other property of the Defendants.

c.  Contacting third parties with whom Labadie has or may have a business relationship and mentioning Labadie or interfering in any way with Labadie's ability to maintain or establish a business relationship.

d.  Making false, derogatory, misleading and disparaging statements about Labadie to any third party or making statements to third parties that would tend to injure Labadie in his trade or business including statements tending to disparage Labadie's reputation or qualification in his trade or business or statements about Labadie that have a natural tendency to lessen Labadie's profits in his trade or business.

e.  Appointing a receiver make an accounting of all Protec assets and to collect and manage all such assets including to avoid further misappropriation of assets and siphoning by Garner, Greenberg, Protec Energy and Antod or any other individual or entity.

-30-

f. Commanding Defendants to preserve all potentially relevant evidence in their possession, custody or control from loss, alteration, or destruction and to notify promptly all third parties possessing such evidence of the terms of the order and the duty to preserve such evidence.

## TWENTY-SECOND CLAIM FOR RELIEF
### (Restitution)

165.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

166.    As a result of the acts and omissions of Garner, Greenberg and Protec, Labadie has suffered losses, costs, and damages that in equity and good conscience should be borne by Defendants and not Labadie.

167.    Labadie is therefore entitled to restitution from Defendants in an amount that will make him whole and restore to him all such losses, costs, and damages.

## TWENTY-THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

168.    Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

169.    As a result of the acts and omissions of Garner, Greenberg and Protec, Defendants have been unjustly enriched at Labadie's expense.

170.    In equity and good conscience, Defendants should not be allowed to enrich itself at Labadie's expense and should disgorge all ill-gotten gain.

171.    Labadie is therefore entitled to disgorgement from Defendants of all ill-gotten gain.

## TWENTY-FOURTH CLAIM FOR RELIEF
### (Equitable Corporate Veil Piercing)

172.   Labadie incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

173.   Upon information and belief, Garner and Greenberg abused the corporate form by converting corporate assets for personal use and commingling said corporate assets with personal assets with no attempt to distinguish proper ownership, no formal documentation of loans, and no charging of interest on loans, and otherwise treated the corporation as the alter-ego of themselves such that the corporate veil should be pierced and Garner and Greenberg should be held personally liable.

174.   Additionally, Garner and Greenberg established entities such as Antod and Protec Energy and possibly others that, upon information and belief, are being used to divert Protec's corporate assets for the purpose of hindering, delaying or defrauding Labadie and other creditors of Protec, Garner and Greenberg, such being an abuse of corporate form.  Accordingly, Labadie is entitled to an order of the Court determining that the corporate veil should be pierced and Antod and Protec Energy should be held liable for the satisfaction of any judgment to which Labadie is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Labadie prays for judgment in its favor and against Defendants as follows:

A.   For an award of treble damages, costs and attorney fees as to Garner and Greenberg pursuant to 18 U.S.C. § 1964(c).

B.   For an award of compensatory damages as to Protec, Garner and Greenberg, in an amount in excess of $75,000, exclusive of interest and costs.

C.   For an award of incidental and consequential damages in an amount to be proven at trial as to all Defendants.

D.   For an award of liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due or in an amount equal to the unpaid wages, whichever is smaller, including reasonable attorney fees and costs pursuant to OKLA. STAT. tit. 40, § 165.1 et seq.

E.   For an award of punitive damages in an amount sufficient to make an example of all Defendants and to deter other such conduct.

F.   For an Order for an accounting of the assets of all Defendants.

G.   For an Order that all Defendants disgorge monies and other property converted by Defendants.

H.   For an Order of imposing a constructive trust on the assets of all Defendants.

I.   For an Order for a Temporary Restraining Order, Preliminary Injunction and Temporary Injunction against all Defendants.

J.   For an Order appointing a receiver to garner and administer the assets of Protec, Garner, Greenberg, Protec Energy and Antod.

K.   For an award of reasonable attorney fees and costs against all Defendants.

L.   For an award of pre- and post-judgment interest against all Defendants.

M.   For an award of such other relief as the Court deems just and equitable.

-33-

## JURY DEMAND

Labadie hereby respectfully demands a jury trial on all issues triable to a jury in this

matter.

Respectfully submitted,

**NEWTON, O'CONNOR, TURNER & KETCHUM,
A Professional Corporation**

By: _____
    W. Kirk Turner, OBA No. 13791
    Christopher S. Thrutchley, OBA No. 15859
    Gregory P. Reilly, OBA No. 22284
    2700 Bank of America Center
    15 West 6th Street
    Tulsa, OK  74119-5423
    Phone:  (918) 587-0101
    Fax: (918) 587-0102

**ATTORNEYS FOR PLAINTIFF,
JAY D. LABADIE**