**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

|   |   |   |
|---|---|---|
| JAY D. LABADIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | |
| | ) | |
| PROTEC FUEL MANAGEMENT, LLC, | ) | Case No. 10-cv-587-CVE-FHM |
| PROTEC ENERGY PARTNERS, LLC, | ) | |
| ANTOD CORP., | ) | |
| TODD G. GARNER, AND | ) | |
| ANDREW GREENBERG, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SPECIAL MOTION TO TRANSFER VENUE, OR IN THE
ALTERNATIVE, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;
AND BRIEF IN SUPPORT**

Andrew R. Turner, OBA #9125
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma 74172
(918) 586-8972, fax (918) 586-8672
Email:  aturner@cwlaw.com

-and-

Leonard K. Samuels, Florida Bar No. 501610
Gregory A. Haile, Florida Bar No. 606421
BERGER SINGERMAN
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, FL  33301
(954) 525-9900, fax (954) 523-2872

Attorneys for Defendants

**TABLE OF CONTENTS**

Page

BACKGROUND ..................................................................................................................1

ARGUMENT ........................................................................................................................4

I.    THIS MATTER SHOULD BE TRANSFERRED PURSUANT TO THE MANDATORY VENUE PROVISION AND 28 U.S.C. § 1406(a) ...................................4

    A.    THE VENUE PROVISION IN THE EMPLOYMENT AGREEMENT SHOULD BE ENFORCED ..................................................................................4

    B.    LABADIE CANNOT ESCAPE THE VENUE PROVISION BY NAMING OTHER DEFENDANTS ..................................................................6

    C.    THIS MATTER SHOULD BE TRANSFERRED BECAUSE LABADIE AND PROTEC FUEL ARE PARTIES TO A LAWSUIT (ALSO ARISING OUT OF THE EMPLOYMENT AGREEMENT) FILED IN THE SOUTHERN DISTRICT OF FLORIDA ........................................................7

II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ...............................................................................................8

    A.    RELEVANT FACTS ..................................................................................................8

    B.    PERSONAL JURISDICTION ANALYSIS ..............................................................10

        1.    Minimum Contacts ........................................................................................11

        2.    Traditional Notions of Fair Play and Substantial Justice ............................12

            a.    Burden on Defendant of Litigating in the Forum ...........................12

            b.    The Forum State's Interest in Adjudicating the Dispute ...............13

            c.    Plaintiff's Interest in a Convenient and Effective Forum ..............13

            d.    Interstate Judicial System's Interest in Obtaining Efficient Resolution ........................................................................................14

            e.    The State's Interest in Furthering Fundamental Substantive Social Policies ..............................................................................15

CONCLUSION ....................................................................................................................16

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102 (1987) .................................. 10

*Bakhsh v. JACRRC Enterprises, Inc.*, 895 P.2d 746 (Okla. Ct. App. 1995) .................................. 5

*Benton v. Cameco Corp.,* 375 F.3d 1070 (10th Cir. 2004) .................................................. 10, 11, 14

*Friedman v. World Transportation, Inc.*, 636 F.Supp. 685 (N.D. Ill. 1986) ................................ 7

*Furry v. First Nat. Monetary Corp.*, 602 F. Supp. 6 (W.D. Okla. 1984) ........................................ 4

*Janko v. Outboard Marine Corp.*, 605 F. Supp. 51 (W.D. Okla. 1985) ........................................... 5

*Jewel Seafoods Ltd. v. M/V Peace River*, 39 F. Supp. 2d 628 (D.S.C. 1999) ................................. 6

*Kaufman v. HSBC USA, Inc.*, 2010 WL 1410997 (N.D. Okla. Mar. 31, 2010) ........................... 11

*OMI Holding, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086 (10th Cir. 1998) ............ 10, 14, 15

*Syntroleum Corp. v. Fletcher Intern., Ltd.* 2008 WL 4936503 (N.D. Okla. Sept. 7, 2008) ............................................................................................................................... *passim*

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ............................................................ 5

*Union Steel America Co, v. M/V Sanko Spruce*, 14 F. Supp. 2d 682 (D.N.J. 1998) ..................... 6

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) ............................................. 10

**Statutes**

28 U.S.C. § 1406(a) ...................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 1

Fed. R. Civ. P. 12(b)(3) ................................................................................................................. 1

## DEFENDANTS' SPECIAL MOTION TO TRANSFER VENUE, OR IN THE ALTERNATIVE, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), Defendants Protec Fuel Management, LLC ("Protec Fuel"), Protec Energy Partners, LLC ("Protec Energy"), Antod Corp. ("Antod"), Todd G. Garner ("Garner"), and Andrew Greenberg ("Greenberg") (collectively, the "Defendants"), specially move to transfer venue to the United States District Court for the Southern District of Florida, or alternatively to dismiss the Complaint filed by Jay D. Labadie [docket #2] ("Complaint") for lack of personal jurisdiction, and state:[1]

## BACKGROUND

Plaintiff Jay D. Labadie ("Labadie") filed the Complaint in the Northern District of Oklahoma against the Defendants, all of whom are Florida residents. The Complaint is a hodgepodge of counts alleging fraud, wage violations, RICO claims, negligence, conversion, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, civil conspiracy, negligent and intentional infliction of emotional distress, tortious interference, slander and slander per se, constructive trust and equitable lien, equitable disgorgement/accounting, unjust enrichment, equitable corporate veil piercing, while seeking an injunction, the appointment of a receiver, and restitution.

Labadie was an employee of Protec Fuel, pursuant to a written employment agreement entered by Labadie and Protec Fuel on August 28, 2007 ("Employment Agreement"). *See* Employment Agreement attached to Affidavit of Andrew Greenberg, ¶4, attached hereto as Exhibit A. The Employment Agreement has a venue provision that specifically and

---

[1] Annexed hereto in support of this Motion are the affidavits of the Defendants, which are identified as follows: "Affidavit of Andrew Greenberg, ¶__;" "Affidavit of Todd Garner, ¶__," "Affidavit of Protec Energy Partners, LLC, ¶__," and "Affidavit of Antod Corp. ¶__."

unambiguously mandates that all litigation arising under the Employment Agreement be exclusively litigated in Florida:

> 11.5 Venue. Any litigation or arbitration arising hereunder **will** be instituted **only in Florida**, the place where this Agreement was executed, and all Parties hereto agree that venue will be proper in said state for all such legal or equitable proceedings.

("Venue Provision") (emphasis added). The Employment Agreement further provides that the Employment Agreement will be governed by Florida law:

> 10.1 Florida Law. This Agreement will be governed by and construed and enforced in accordance with the laws of the State of Florida, and all of its provisions will be administered according to the laws of the State of Florida and the Agreements [sic] validity will be determined under the laws of the State of Florida.

("Governing Law Provision")

Despite the obvious relevance of the Employment Agreement, the Venue Provision, and the Governing Law Provision, Labadie wholly omits any mention of them from the Complaint. Labadie deliberately recites the financial aspects of the Employment Agreement without disclosing to this Court the existence of the Employment Agreement. A review of the Complaint's allegations reveals Labadie's apparent attempt to deceive this Court and conceal the existence of the Employment Agreement:

| **Paragraph 14 of the Complaint** | **Employment Agreement** |
|---|---|
| a. Protec [Fuel] would pay Labadie a non-refundable monthly base draw of $12,500.00 | 4.1 Base Draw: JDL [i.e. Labadie] will receive a base draw of twelve thousand five hundred dollars ($12,500.00) per month …. |
| b. During the first year of employment, Protec [Fuel] would pay Labadie a monthly bonus or commission in the amount of 50% of the net profit of all physical and financial transactions Labadie completed relating to natural gas and 30% of the net profit of all | 4.1(i) the first year, the executive shall receive 50% of the net profit of all physical financial transactions JDL [i.e. Labadie] completes relating to natural gas and 30% of all physical and financial transactions which employee |

| | |
|---|---|
| physical and financial transactions completed related to petroleum products. | completes relating to petroleum. |
| c. During the second and each subsequent year of employment, Protec [Fuel] would pay Labadie a monthly bonus or commission in the amount of 30% of all physical financial transactions Labadie completed relating to both natural gas and petroleum products. | 4.1(ii) the Second year and thereafter for the remainder of JDL's [i.e. Labadie] employment, JDL [i.e. Labadie] shall receive 30% of the physical and financial transactions relating to natural gas and petroleum. |
| d. Protec [Fuel] would grant Labadie a 5% membership or equity interest in Protec [Fuel] upon Labadie's fulfillment of certain conditions with such interest vesting upon Labadie's completion of four years of employment with Protec [Fuel]. | 4.2 Membership Interests. JDL [i.e. Labadie] shall be entitled to receive a maximum five percent (5%) equity interest (the interests) in the Company, provided that JDL [i.e. Labadie] shall attain the minimum annual gross revenue goals as follows …. |
| e. Protec [Fuel] would reimburse Labadie for business expenses. | 4.3 Reimbursement for Expenses. JDL [i.e. Labadie] shall be reimbursed for 100% of business related travel and marketing expenses, provided however that such expenses in excess of $2,000.00, must first be approved by the Company. |
| f. Labadie would be entitled to four weeks of paid vacation annually. | 4.5 Vacation. JDL [i.e. Labadie] will be entitled to four (4) weeks paid vacation annually, taken at such time or times as to not interfere with the operations of the Company. |
| g. Protec [Fuel] would provide a 401(k) retirement plan in which Labadie would be allowed to participate and in which Protec [fuel] would make periodic non-matching contributions by payroll deduction. | 4.6 401-K. The Company provides a non-matching 401-K in which JDL [i.e. Labadie] may participate in this option. |

Labadie's general allegations, including the allegations relating to his employment relationship with Protec Fuel and the details of the Employment Agreement (which Labadie failed to disclose to this Court) are incorporated into each count of the Complaint.

It is apparent that Labadie did not want to disclose the Employment Agreement to this Court, because to do so would have notified the Court of the Venue Provision (and the Governing Law Provision), which mandates that this case be transferred to Florida.

## ARGUMENT

### I.   THIS MATTER SHOULD BE TRANSFERRED PURSUANT TO THE MANDATORY VENUE PROVISION AND 28 U.S.C. § 1406(a)

The Defendants respectfully move to transfer this case to the United States District Court for the Southern District of Florida.  The legal standard for transfer under 28 U.S.C. § 1406(a) is, in relevant part, as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to only district or division in which it could have been brought.

This case was filed in the wrong district; venue is proper in the Southern District of Florida.  Venue is inappropriate in Oklahoma because 1) the Venue Provision should be enforced; 2) Labadie cannot satisfy the "unreasonable and unjust" standard necessary to override the Employment Agreement's Venue Provision; and 3) Labadie cannot escape the Venue Provision merely by naming other defendants.

#### A.   THE VENUE PROVISION IN THE EMPLOYMENT AGREEMENT SHOULD BE ENFORCED

Venue provisions should be construed as valid and enforceable and cannot be set aside unless they are proven to be unreasonable.  *Furry v. First Nat. Monetary Corp.*, 602 F. Supp. 6, 8 (W.D. Okla. 1984) (Russell, J.) (granting transfer, stating that "[f]orum selection clauses are *prima facie* valid and should be enforced unless they can be shown to be unreasonable under the

4

circumstances"); *see also Janko v. Outboard Marine Corp.*, 605 F. Supp. 51, 52 (W.D. Okla. 1985) (Russell, J.) ("Venue selection provisions should be enforced unless a party can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." (internal quotation marks omitted), *quoting The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)); *Bakhsh v. JACRRC Enterprises, Inc.*, 895 P.2d 746, 747 (Okla. Ct. App. 1995) ("[t]he party who brings suit in a forum other than the selected forum should bear the burden of persuading the court that enforcement of the forum clause would be unfair or unreasonable").

*Janko* elaborated on this stringent standard. In reliance on the United States Supreme Court in *Bremen*, in *Janko* Judge Russell stated that to overcome a venue provision the trial in the contractual forum must be **"gravely difficult and inconvenient:"**

> The Plaintiffs argue that even though the Defendant is headquartered in the forum selected by the contract, it would be burdensome for the Plaintiffs to litigate there. However, the Supreme Court has said that the party attempting to show unreasonableness in litigating under a selection clause "should bear a heavy burden of proof." *The Bremen,* 407 U.S. at 17, 92 S.Ct. at 1917. **To demonstrate unreasonableness, it must be shown that a "trial in the contractual forum will be so gravely difficult and inconvenient that [the party opposing transfer] will for all practical purposes be deprived of his day in court."** *Id.* at 18, 92 S.Ct. at 1917. Certainly, this is the most convenient forum for the Plaintiffs, and, indeed, they have shown they will be considerably inconvenienced if the transfer is granted. However, the Court is not persuaded it would be unreasonable or unjust for the Plaintiffs to pursue this action in Illinois. *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341 (3rd Cir.1966); *Full-Sight Contact Lens v. Soft Lenses, Inc.,* 466 F.Supp. 71 (S.D.N.Y.1978); *Bense* and *Taylor, supra.*

*Id.* at 52 (emphasis added); *see also Bakhsh*, 895 P.2d at 747 ("To demonstrate the unreasonableness of a forum selection clause, it must be shown that trial in the contractual forum will be so gravely difficult and inconvenient that a party opposing transfer will, for all practical purposes, be deprived of his day in court.").

5

Here, the Plaintiff has not – nor can he – set forth any facts to establish that Florida is a gravely difficult and inconvenient forum. In fact, Labadie has for the last several years traveled to Florida for one week per month. Labadie spent that time working and engaging in leisure activities such as attending concerts, dinners, sporting events. Affidavit of Todd Garner, ¶12, attached hereto as Exhibit B.

**B.    LABADIE CANNOT ESCAPE THE VENUE PROVISION BY NAMING OTHER DEFENDANTS**

The Employment Agreement was signed by Protec Fuel and Labadie. However, to the extent Labadie seeks to circumvent the Venue Provision by adding Protec Energy, Antod, Garner, and Greenberg as defendants, such attempt must be denied.

Although concerned with the potential for multi-fora litigation, courts have specifically refused to allow plaintiffs to escape the enforcement of venue provisions merely by adding defendants not party to the provisions. *Jewel Seafoods Ltd. v. M/V Peace River* is a prime example:

> [T]his court will enforce the forum selection clause despite the specter of multi-fora litigation because to do otherwise would allow Plaintiff to escape enforcement of forum selection simply by adding defendants and claims.

39 F. Supp. 2d 628, 630 n. 2 (D.S.C. 1999) (*citing Union Steel America Co, v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 696 (D.N.J. 1998) ("The result of accepting [plaintiff's] argument would allow plaintiffs to escape enforcement of forum selection clauses simply by adding defendants and claims. This result cannot be accepted … Therefore this Court will enforce the clause despite the specter of multi-fora litigation.")).

Additionally, here there is no specter of multi-fora litigation if this case is transferred, as Protec Energy, Antod, Garner and Greenberg all consent to litigation in the Southern District of Florida. *See* Affidavit of Andrew Greenberg, ¶9, attached hereto as Exhibit A; Affidavit of

6

Todd Garner ¶9, attached hereto as Exhibit B; Affidavit of Protec Energy Partners, LLC, ¶6, attached hereto as Exhibit C; Affidavit of Antod Corp., ¶5, attached hereto as Exhibit D.

Further, any assertion by Labadie that Protec Energy, Antod, Garner and Greenberg are not bound by the venue provisions must be wholly rejected as it was in *Friedman v. World Transportation, Inc.*:

> We are also not persuaded by [plaintiff]'s argument that because the forum selection clause appears in just one contract, it should not be enforced to affect non-parties to the contract. First, we are enforcing it against [plaintiff] for *his* suit, not against the other parties, who would have been sued in New York anyway if [plaintiff] would have complied with his contractual duty to file there. This is *[plaintiff]*'s suit; *he* is a party to the purchase contract; …. [plaintiff] cannot escape his resulting contractual obligations under the forum clause simply because he happened to join additional parties who did not sign that contract. In other words, the point is not, as [plaintiff] argues, that they did not agree to the contract and should not be bound by it. Rather, he *did* agree to it and *is* bound to it for *his* suit naming World as a defendant…. In any event, we observe that none of these third parties have objected to the proposed transfer; [plaintiff]'s protests on their "behalf" thus ring hollow.

636 F. Supp. 685, 690-91 (N.D. Ill. 1986) (italics in original).

### C. THIS MATTER SHOULD BE TRANSFERRED BECAUSE LABADIE AND PROTEC FUEL ARE PARTIES TO A LAWSUIT (ALSO ARISING OUT OF THE EMPLOYMENT AGREEMENT) FILED IN THE SOUTHERN DISTRICT OF FLORIDA

Currently pending in the Southern District of Florida is a lawsuit by Protec Fuel against Labadie, arising out of the Employment Agreement. *See* Complaint styled Protec Fuel Management, LLC v. J. D. Labadie Case No. 9:10-CV-81150-KLR attached hereto as Exhibit E. In the lawsuit filed on September 29, 2010, Protec Fuel alleges that Labadie breached the Employment Agreement's confidentiality provision, breached his fiduciary duty and misappropriated Protec Fuel's trade secrets by taking or otherwise retaining documents and materials containing trade secrets, and confidential and propriety information in violation of his Employment Agreement's confidentiality provision. Protec Fuel's breach of fiduciary duty

7

claim is also rooted in Labadie's attempts to steal Protec Fuel's key employees and recruit them to join a company that apparently intends to compete directly against Protec. In light of Protec Fuel properly filing its lawsuit in the Southern District of Florida, this Court has further incentive to transfer this matter there so as to avoid the unnecessary inefficiency of having two cases involving the same parties and arising out of the same Employment Agreement tried in two different districts. *Syntroleum Corp. v. Fletcher Intern., Ltd.* 2008 WL 4936503, *2 (N.D. Okla. Sept. 7, 2008) (Payne, J.) ("Furthermore, litigating what is essentially the same case in both Oklahoma and New York would be an extremely inefficient and complex method of resolving the dispute.").

Accordingly, this Court should enforce the Venue Provision and transfer this action to the Southern District of Florida.

## II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.   RELEVANT FACTS

In the alternative to transferring venue, Defendants[2] move to dismiss the claims against them for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The Defendants have no meaningful contact with Oklahoma and should not be forced to litigate in Oklahoma. Specifically, neither Antod nor Protec Energy have any contacts with Oklahoma. They (a) do not transact or conduct business in Oklahoma; (b) are not registered or licensed to do business in Oklahoma; (c) have no customers or clients in Oklahoma; (d) do not have any property in Oklahoma; (e) do not own, lease, or control property or assets in Oklahoma; (f) do not maintain offices or bank accounts in Oklahoma (g); do not have shareholders that reside in Oklahoma; (h)

---

[2] For purposes of this section only, the defined term "Defendants" does not include a reference to Protec Fuel, as Protec Fuel concedes that the personal jurisdiction analysis would not lead to the dismissal of Protec Fuel.

do not maintain phone or fax listings in Oklahoma; (i) do not advertise or otherwise solicit business in Oklahoma; (j) do not travel to Oklahoma by way of salespersons or other representatives; (k) do not pay taxes in Oklahoma; (l) do not visit potential customers in Oklahoma; (m) do not recruit employees in Oklahoma; (n) they do not have any vendors or customers in Oklahoma; and (o) do not generate any sales or income from Oklahoma (or anywhere else). *See* Affidavit of Protec Energy Partners, LLC, ¶7, attached hereto as Exhibit C; Affidavit of Antod Corp., ¶6, attached hereto as Exhibit D.

Greenberg also has no contacts with Oklahoma. Other than traveling to Oklahoma once in 1995, Greenberg has never been to Oklahoma. *See* Affidavit of Andrew Greenberg, ¶10, attached hereto as Exhibit A. Greenberg does not (a) transact or conduct business in Oklahoma; (b) have any property in Oklahoma; (c) own, lease, or control property or assets in Oklahoma; (d) maintain bank accounts in Oklahoma; or (e) maintain phone or fax listings in Oklahoma. Greenberg has no contact with Oklahoma whatsoever. *Id.*

Garner has no material contacts with Oklahoma. Garner lived in Oklahoma from 1995 until 2001. Since moving from Oklahoma in 2001, Garner has been to Oklahoma two times (for three days each time): once for his daughter's birthday and a second time for Labadie's daughter's wedding. *See* Affidavit of Todd Garner, ¶10, attached hereto as Exhibit B. Garner also has a bank account in Oklahoma. However, the bank account has only $400 and Garner has not made a transaction using that account since 2001. *Id.* Other that these intermittent and immaterial contacts with Oklahoma, Garner has no relationship with Oklahoma. Garner does not (a) transact or conduct business in Oklahoma; (b) have any property in Oklahoma; (c) own, lease, or control property or assets in Oklahoma; (d) maintain bank accounts in Oklahoma; or (e) maintain phone or fax listings in Oklahoma. *Id.* at ¶11.

9

Garner's contacts with Oklahoma fall far short of the contacts by an out-of-state corporation that was reaching out to a Colorado plaintiff in *Benton v. Cameco Corp.,* 375 F.3d 1070, 1076 (10th Cir. 2004). In *Benton,* although the court found that minimum contacts existed, the court also acknowledged that it was dealing with a "very close case" despite the fact that the defendant (1) entered into an agreement with a Colorado resident that set forth the key terms of a joint venture; (2) would have partially performed the transactions under the agreement in Colorado by making payments to the plaintiff in Colorado, however, no payments were ever made; (3) sent employees to Colorado to conduct a due diligence review of the plaintiff's business in connection with the agreement; (4) sent significant correspondence to Colorado; and (5) committed tortious acts by interfering with the plaintiff's business relationships, the effects of which were suffered in Colorado. In light of the fact that *Benton* was deemed to be a very close case, and the fact that Garner's contacts with Labadie were far less than the *Benton* defendant's contacts with the Colorado plaintiff, it would seem that Garner's contacts do not satisfy the minimum contacts test.

### B.  PERSONAL JURISDICTION ANALYSIS

Personal jurisdiction analysis involves a two-step inquiry. A court must first decide whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). If a defendant's actions create sufficient minimum contacts, the court must then examine the reasonableness of asserting personal jurisdiction. In other words, the court must "consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holding, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, at 1091 (10th Cir. 1998), *quoting Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 113 (1987); *see also Syntroleum Corp.,* 2008 WL 4936503, *2.

10

Oklahoma courts apply a sliding scale test when applying the two step inquiry: the "weaker the plaintiff's showing of minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction … [and] an especially strong showing of reasonableness may serve to fortify a borderline showing of minimum contacts." *Syntroleum Corp.,* 2008 WL 4936503, *6.

### 1. **Minimum Contacts**

To establish minimum contacts, Labadie must prove that the Defendants purposely availed themselves of the privilege of conducting activities towards the residents of Oklahoma and that Labadie's claims arise out of or result from the actions by the Defendants that create a substantial connection with Oklahoma. *See, e.g., Benton v. Cameco Corp.,* 375 F.3d 1070, 1076 (10th Cir. 2004).

As described above, neither Antod nor Protec Energy have any contacts with Oklahoma, Greenberg has no contacts with Oklahoma (other than traveling to Oklahoma once in 1995), and Garner has no material contacts with Oklahoma. Certainly, there are not sufficient minimum contacts establishing that Defendants purposely availed themselves of the privilege of conducting activities towards the residents of Oklahoma.

Because the Defendants clearly do not have the requisite minimum contacts with Oklahoma, this Court need not consider the reasonableness prong, i.e., whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *Kaufman v. HSBC USA, Inc.*, 2010 WL 1410997, *8 (N.D. Okla. Mar. 31, 2010) (Frizzell, J.) ("Because [the plaintiffs] have not established minimum contacts with the forum state, this court need not address the question of whether the exercise of jurisdiction over the Defendants would comport with fair play and substantial justice."). Accordingly, dismissal should be granted.

### 2. Traditional Notions of Fair Play and Substantial Justice

If this Court concludes that the minimum contacts prong has been satisfied, and it should not, Due Process requires that this Court ensure that the exercise of personal jurisdiction over the Defendants does not offend traditional notions of fair play and substantial justice.

The question under this standard is "whether a district court's exercise of jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Syntroleum Corp. v. Fletcher Intern., Ltd.*, 2008 WL 4936503 at *5. To determine whether the exercise of jurisdiction would be reasonable in light of the surrounding circumstances, the Court must consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.*

#### a. Burden on Defendant of Litigating in the Forum

This is the most important element of determining reasonableness. *Id.* at *6 ("[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of jurisdiction."). In determining the burden on the defendant on litigating in the forum, Oklahoma courts look at whether the defendant maintains offices, owns property, has employees or conducts business in that forum. *Id.* Courts will also look at whether the defendant's evidence or witnesses are located in Oklahoma. *Id.*

Antod and Protec Energy maintain no offices, own no property, have no employees, have no customers, have no vendors, and conduct no business in Oklahoma. *See* Affidavit of Protec Energy Partners LLC, ¶7, attached hereto as Exhibit C; Affidavit of Antod Corp., ¶6, attached hereto as Exhibit D. Additionally, none of their witnesses or evidence are located in Oklahoma.

*See* Affidavit of Protec Energy Partners LLC, ¶¶8, 9, attached hereto as Exhibit C; Affidavit of Antod Corp., ¶¶7, 8, attached hereto as Exhibit D.  Moreover, Greenberg has no ties to Oklahoma and Garner has no material ties to Oklahoma, and their evidence and witnesses are not located in Oklahoma.  *See* Affidavit of Andrew Greenberg, ¶¶10, 11, 12, attached hereto as Exhibit A; Affidavit of Todd Garner, ¶¶10, 11, 13, 14, attached hereto as Exhibit B.  If this case were to remain in Oklahoma, there would be significant expenses associated with sending Defendants' witnesses and their counsel and accountants (who are associated with forming Protec Fuel, Protec Energy and Antod, and prepared financial paperwork) to trial in the Northern District of Oklahoma.  *See* Affidavit of Andrew Greenberg, ¶11, attached hereto as Exhibit A; Affidavit of Todd Garner, ¶13, attached hereto as Exhibit B.  As such, this factor favors transfer to Florida.

### b. The Forum State's Interest in Adjudicating the Dispute

Any interest that Oklahoma has in adjudicating this dispute is minimized because the law of Florida governs this action.  *Syntroleum,* 2008 WL 4936503 at *6 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors … this interest, however, is minimized when the law of another state or country will govern.").

Further, the Complaint does not allege business practices that affect Oklahoma's citizens more than citizens of other states.  It instead alleges conduct that purportedly took place in Florida.  Florida has a stronger interest than Oklahoma in redressing the alleged wrongful acts of Florida companies and Florida citizens.  Accordingly, this factor favors dismissal.

### c. Plaintiff's Interest in a Convenient and Effective Forum

This Court is obligated to consider whether Labadie can receive convenient and effective relief in another forum.  *Syntroleum,* 2008 WL 4936503, *7 (internal quotation marks omitted).

13

This matter is governed by Florida law, and Labadie (by way of the Venue Provision) agreed that Florida was the appropriate forum. Thus, Labadie cannot now suggest that Florida is not the most convenient and effective forum. As Judge Payne stated in *Syntroleum,* "[t]he court would be hard-pressed to find that [Plaintiff] cannot obtain effective relief in New York when it already voluntarily consented to jurisdiction there." *Id*. This factor favors dismissal.

### d. Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor requires the court to consider whether the forum state, Oklahoma, is the most efficient place to litigate the dispute. *Benton,* 375 F.3d at 1080. Efficiency is determined by "the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id. See also, OMI Holdings, Inc.,* 149 F.3d at 1097; *Syntroleum,* 2008 WL 4936503, at *7.

As previously discussed, the Defendants do not reside in Oklahoma (but Florida), the Defendants' relevant documents and material witnesses are not in Oklahoma (but Florida), and the purported wrongful acts did not take place in Oklahoma (but Florida). Of course, Labadie will surely assert that the aforementioned concerns are outweighed by his residency in Oklahoma.

However, this Court must also consider the irrefutable fact that Florida law governs this case. *Benton,* 375 F.3d at 1080. Transferring this case to the Southern District of Florida is the only way to prevent piecemeal litigation for two reasons. First, as discussed earlier, Protec Fuel has sued Labadie in the Southern District of Florida as it was required to do in light of the mandatory Venue Provision. Should this Court accept jurisdiction over the Defendants, it will lead to piecemeal litigation. Second, all of the Defendants (including Protec Fuel) have

14

consented to transferring this matter to the Southern District of Florida. *See* Affidavit of Andrew Greenberg, ¶9, attached hereto as Exhibit A; Affidavit Todd Garner, ¶9, attached hereto as Exhibit B; Affidavit of Protec Energy Partners, LLC, ¶6, attached hereto as Exhibit C; Affidavit of Antod Corp., ¶5, attached hereto as Exhibit D. Piecemeal litigation could be avoided if this Court agrees to transfer this matter to the Southern District of Florida. Accordingly, this factor favors dismissal.

       e. **The State's Interest in Furthering Fundamental Substantive Social Policies**

This factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *OMI Holdings, Inc.,* 149 F.3d at 1097. The Defendants concede that Oklahoma has an interest in ensuring that its residents are paid money due and owed to them, but this interest is lessened when the resident agrees that the dispute should be resolved in the jurisdiction where his or her employer is located. Oklahoma courts consistently conclude that valid venue provisions should be enforced, and thus, this Court should enforce the Venue Provision agreed to by Labadie in this matter. Because Labadie consented to conducting business in Florida (with Florida corporations and Florida citizens), consented to jurisdiction in Florida, and consented to Florida law as the law governing this dispute, this factor favors transfer to Florida.

The analysis of the above factors establish that the exercise of jurisdiction over the Defendants would offend the traditional notions of fair play and substantial justice. Accordingly, the Complaint should be dismissed.[3]

---

[3] The Defendants (including Protec Fuel) reserve the right to file a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) should this Motion be denied.

## **CONCLUSION**

Based upon the foregoing, the Defendants respectfully request that the Court dismiss the Complaint for lack of personal jurisdiction or transfer the case to the United States District Court for the Southern District of Florida, and order such other and additional relief as the Court deems just and proper.

Dated:  October 12, 2010.

/s/ Andrew R. Turner
Andrew R. Turner, OBA #9125
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma 74172
(918) 586-8972, fax (918) 586-8672
Email:  aturner@cwlaw.com

-and-

Leonard K. Samuels, Florida Bar No. 501610
Gregory A. Haile, Florida Bar No. 606421
BERGER SINGERMAN
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, FL  33301
(954) 525-9900, fax (954) 523-2872

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

W. Kirk Turner, Esq.
Christopher S. Thrutchley, Esq.
Gregory P. Reilly, Esq.
NEWTON, O'CONNOR, TURNER & KEICHUM
2700 Bank of America Center
15 West 6th Street
Tulsa, OK  74119

/s/ Andrew R. Turner