UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY D. LABADIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-0587-CVE-FHM |
| ) | |
| PROTEC FUEL MANAGEMENT, LLC, ) | |
| ANTOD CORP., TODD G. GARNER, ) | |
| ANDREW GREENBERG, and ) | |
| PROTEC ENERGY PARTNERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Special Motion to Transfer Venue, or in the Alternative, Motion to Dismiss for Lack of Personal Jurisdiction; and Brief in Support (Dkt. # 12). Defendants ask the Court to transfer this case to the United States District Court for the Southern District of Florida, because plaintiff's employment agreement contains a venue or forum selection clause requiring the parties to litigate any disputes in Florida. In the alternative, defendants Antod Corp. (Antod), Todd G. Garner, Andrew Greenberg, and Protec Energy Partners, LLC (Protec Energy) assert that plaintiff's claims against them should be dismissed, because this Court lacks personal jurisdiction over them.[1]

---

[1] Defendant Protec Fuel Management, LLC (Protec) concedes that it is subject to personal jurisdiction in Oklahoma, and does not join in the motion to challenge personal jurisdiction over it. Dkt. # 12, at 8 ([Protec] concedes that the personal jurisdiction analysis would not lead to the dismissal of [Protec]).

**I.**

Jay D. Labadie is a resident of Tulsa, Oklahoma, and he formerly worked for OG&E Energy Corporation (OG&E) as the Director of Wholesale Marketing. Dkt. # 2, at 3. Labadie alleges that Garner and Greenberg contacted him, and asked to leave his position with OG&E to accept employment with Protec. Garner is a co-owner and managing member of Protec and Protec Energy and is also the President of Antod. Greenberg is also a co-owner and managing member of Protec and Protec Energy and he serves as the Secretary of Antod. Garner and Greenberg are residents of Florida. Protec and Protec Energy are limited liability companies organized under Florida law and have their principal place of business in Boca Raton, Florida. Id. at 1; Dkt. # 12-1, at 7, 12. Antod is a Florida corporation with its principal place of business in Boca Raton, Florida. Dkt. # 12-1, at 16. Labadie claims that Protec was attempting to recruit him to establish a Tulsa office for Protec, and offered him substantially more money than he was earning at OG&E. Labadie states that he accepted Protec's offer of employment based on Protec's promises of a better salary, monthly and annual bonuses, a retirement package, and the potential for obtaining an ownership interest in Protec. Dkt. # 2, at 3-4.

Defendants claim that Labadie signed a written employment agreement adopting terms orally agreed upon by the parties. Labadie claims that the parties had an oral agreement only and he did not sign the written employment agreement offered by Protec.[2] The written employment agreement

---

[2] Defendants state that plaintiff maintained the fully-executed copy of the employment agreement that he signed and has admitted to this fact. Dkt. # 12-1, at 3. However, the only evidence produced by defendants to support this statement are the affidavits of Greenberg and Garner. Id. at 3, 8. Plaintiff refutes defendants' statement in his own affidavit, and there is conflicting evidence as to whether plaintiff executed the written employment agreement. See Dkt. # 18-1, at 4.

contains financial terms governing Labadie's employment, including salary, commissions, and the possibility for Labadie to acquire an equity interest in Protec. Dkt. # 12-1, at 39. The employment agreement also contains two provisions relevant to subsequent litigation that might arise out of Labadie's employment:

> 10.1   Florida Law.  This Agreement will be governed and construed and enforced in accordance with the laws of the State of Florida, and all of its provisions will be administered to the laws of the State of Florida and the Agreements [sic] validity will be determined under the laws of the State of Florida.
>
> 11.5   Venue.  Any litigation or arbitration arising hereunder will be instituted only in Florida, the place where this Agreement was executed, and all Parties hereto agree that venue will be proper in said state for all such legal or equitable proceedings.

Dkt. # 12-1, at 41, 42. The copy of the employment agreement produced by defendants is not signed by Labadie, but is signed by Greenberg on behalf of Protec.

Labadie alleges that Protec failed to pay him bonuses and commissions earned under the parties' oral agreement, and he repeatedly asked Protec to pay these amounts. Dkt. # 2, at 5. He claims that Protec would offer to pay some or all of the unpaid bonuses or commissions at a future date. However, Protec would allegedly make excuses that immediate payment of the full amount of commissions or bonuses was not possible, while at the same assuring Labadie that his bonuses and commissions would be fully paid in the future. Id. at 6. Labadie also alleges that Protec agreed in September 2009 to accelerate the vesting of his promised five percent equity interest in Protec, but Protec failed to follow through with its promise. Id. Labadie claims that Protec's failure to comply with the financial terms of his employment agreement caused him financial hardship, and that he called Garner and Greenberg on a weekly basis from January to August 2010 inquiring about the payment of his bonuses and commissions. Id. at 7. Protec allegedly continued to make promises

3

to pay Labadie's bonuses and commissions but never actually made the promised payments. Labadie states that he was forced to liquidate investments and make early withdrawals from an IRA to pay household expenses due to Protec's failure to pay bonuses and commissions. Id. at 9. Finally, he alleges that Garner and Greenberg sent threatening letters and e-mails to Labadie causing him to fear for the safety of himself and his family. Id. at 10-11.

On September 17, 2010, plaintiff filed his complaint alleging 24 claims against defendants Protec, Protec Energy, Antod, Garner, and Greenberg. The theories of liability alleged in the complaint include a claim under Oklahoma Protection of Labor Act, OKLA. STAT. tit. 40, § 1651 et seq., a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO), as well as state law claims of breach of contract, conversion, breach of fiduciary duty, fraud, civil conspiracy, negligent and intentional infliction of emotional distress, tortious interference with business relations, slander, restitution, and unjust enrichment. Dkt. # 2, at 11-32. Plaintiff seeks monetary damages in excess of $75,000, equitable relief, and a preliminary and permanent injunction preventing defendants from interfering with his current employment or business operation. The written employment agreement is not mentioned in the complaint, although the financial terms recited in the complaint are nearly identical to the terms of the written employment agreement.

Protec filed its own lawsuit against Labadie in the Southern District of Florida, alleging that Labadie was an unsatisfactory employee who solicited key employees to leave Protec. Dkt. # 12-1, at 23-25. It further alleges that Labadie used proprietary business information and trade secrets in his new job for Bosselman Energy, Inc. (Bosselman), a supplier to Protec, and Protec has been and is being harmed by Labadie's use of this protected information. Id. at 26-27. Protec asserts claims

for breach of contract, misappropriation of trade secrets, and breach of fiduciary duty, and seeks monetary damages and injunctive relief. Protec filed its case on September 29, 2010, twelve days after Labadie filed his case in this Court.

**II.**

Defendants claims that the written employment agreement contains a forum or venue selection clause and the case should be transferred to the forum agreed upon by the parties. Defendants argue that plaintiff filed this case in the wrong venue and the case should be transferred to the Southern District of Florida under 28 U.S.C. § 1406[3] or, in the alternative, the case should be dismissed for improper venue. When reviewing a motion to transfer or dismiss under § 1406, the district court has discretion to transfer or dismiss a case if it is determined the case was filed in an improper venue. Trujillo v. Williams, 465 F.3d 1210, 1223 (10th Cir. 2006). The Court may consider matters outside the pleadings and the Court is not required to accept the allegations of the complaint as true to the extent that the allegations of the complaint are controverted by other evidence. See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, 471 F.3d 544, 549-50 (4th Cir. 2006); Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundait Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Vazquez v. Central States Joint Bd., 547 F. Supp. 2d 833, 865 n.18 (N.D. Ill. 2008). However, the Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004). The party requesting transfer of venue under § 1406 bears the burden to show that transfer is

---

[3]   Defendants do not request a transfer of venue under 28 U.S.C. § 1404, and the Court does not reach the issue of transfer of venue under § 1404.

5

appropriate. S & L Birchwood, LLC v. LFC Capital, Inc., ___ F. Supp. 2d ___, 2010 WL 4052187, *3 (E.D.N.Y. Oct. 13, 2010); RAIT Partnership, L.P. v. Fieldstone Lester Shear & Denberg, LLP, 2009 WL 3297310 (D. Del. Oct. 14, 2009).

Certain defendants also ask the Court to dismiss plaintiff's claim for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). As to the motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

### III.

Defendants ask the Court to transfer this case to the Southern District of Florida based on the venue clause in the written employment agreement. In the alternative, defendants (except

6

Protec) argue that they are not subject to personal jurisdiction in Oklahoma and ask the Court to dismiss plaintiff's claims against them. Plaintiff responds that the venue or forum selection clause is unenforceable and this Court should retain venue over this case. Dkt. # 18, at 10-18. He also asserts that the Court has specific personal jurisdiction over defendants based on their contacts with Oklahoma in connection with plaintiff's employment. Id. at 19-29.

**A.**

Defendants ask the Court to transfer this case to the Southern District of Florida under § 1406, because plaintiff filed this case in the wrong venue by ignoring the venue clause of the written employment agreement.[4] Dkt. # 12, at 7-10. Plaintiff responds that he did not sign the written employment agreement and the venue provision may not be enforced against him. Dkt. # 18, at 11-14. He also argues that the venue provision is unenforceable as a matter of law and is inapplicable to the majority of his claims against defendants. Id. at 14-18.

Defendants refer to the "venue provision" of the written employment agreement interchangeably as a venue selection clause and a forum selection clause. However, a venue selection clause is distinguishable from a forum selection clause. Unlike a forum selection clause, a venue selection clause authorizes, but does not require, litigation in certain forums and it may permit multiple acceptable forums for litigation. SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.,

---

[4]    Defendants also argue that the Court should consider transferring this case in the interests of judicial economy, because Protec has filed a separate lawsuit in the Southern District of Florida and it would be a waste of judicial resources to try the cases in separate courts. Id. at 10-11. However, this argument is based on defendants' primary argument that the Southern District of Florida is the only proper venue due to the forum selection clause, and the Court finds that this argument does not provide a separate basis for the Court to transfer this case to the Southern District of Florida. In any event, this case was filed first, and Protec was aware that it was creating the potential for litigation of similar issues in different courts by filing its own, later-filed case in a different judicial district.

7

105 F.3d 578, 582 (10th Cir. 1997). "The existence of a venue selection clause does not impose an absolute duty nor does it endow a party with an absolute right to have every dispute between the parties litigated in the named forum." Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982). On the other hand, forum selection clauses are presumed to be valid and the burden is on the party resisting enforcement to show that enforcement of the clause would be unreasonable under the circumstances. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992). The party resisting enforcement of a forum selection provision "carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992). The Tenth Circuit has found that forum selection clauses fall into two general categories - mandatory or permissive. Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause must contain "clear language showing that jurisdiction is appropriate only in the designated forum." Id. (quoting Thompson v. Founders Group Int'l, 886 P.2d 904, 910 (Kan. Ct. App. 1994). A permissive forum selection clause permits suit to be brought in a particular jurisdiction, but does not prevent the parties from litigating in a different forum. SBKC Serv. Corp., 105 F.3d at 581-82.

The Court has reviewed defendants' motion and it appears that defendants are asking the Court to construe the venue provision as a mandatory forum selection clause. Defendants are not arguing that the state and federal courts of Florida are simply a permissible forum for this litigation; instead, defendants argue that plaintiff must file his claims in a Florida court and there is no other

forum in which plaintiff may proceed with his claims. Dkt. # 12, at 7. This result is authorized only if the parties executed a mandatory forum selection clause, and the authority cited by defendants supports this understanding of defendants' arguments. See Janko v. Outboard Marine Corp., 605 F. Supp. 51 (W.D. Okla. 1985) (transferring case when parties agreed to "venue selection clause" specifying only the state court in Lake County, Illinois or the Northern District of Illinois as appropriate forums); Furry v. First Nat'l Monetary Corp., 602 F. Supp. 6 (W.D. Okla. 1984) (transferring case based on applicability of a mandatory forum selection clause); Baksh v. JACRRC Enters., Inc., 895 P.2d 746, 747 (Okla. Civ. App. 1995) (dismissing case due to mandatory forum selection clause stating that all litigation between parties would occur in Dallas, Texas).

The venue provision in this case, if enforceable, is a mandatory forum selection clause requiring that certain claims be litigated in Florida. The employment agreement states that "[a]ny litigation or arbitration arising hereunder will be instituted only in Florida." Dkt. # 12-1, at 42. The provision does not simply permit the parties to litigate in a specified forum but, instead, it states that Florida is the only proper venue. The use of the exclusive term "only" is evidence that the parties intended to limit jurisdiction to a particular forum or forums. See K & V Scientific Co., Inc. v. Bayerishe Moteren Werke Aktiengesellschaft, 314 F.3d 494, 500 (10th Cir. 2002). The forum selection clause is "prima facie valid" unless plaintiff can meet his heavy burden to show that the clause is invalid or enforcement of the clause would be unjust under the circumstances. Riley, 969 F.2d at 957.

The parties dispute whether plaintiff signed the written employment agreement and if the Court may consider the forum selection clause when reviewing defendants' motion to transfer or dismiss. There is conflicting evidence concerning whether plaintiff actually agreed to the venue

9

provision of the written employment agreement. Defendants have produced a copy of the written employment agreement, but it is signed by Greenberg only and the line for plaintiff's signature is blank. Dkt. # 12-1, at 43. Plaintiff states that parties orally agreed to the financial terms of his employment with Protec, and Protec asked plaintiff to sign a written employment agreement after he had already resigned from OG&E. Dkt. # 18-1, at 4. He states that he does "not recall signing the document or agreeing to terms that we never discussed, such as a venue clause purporting to force me to resolve disputes in South Florida." Id. Greenberg and Garner have submitted affidavits stating that "Labadie has admitted that he has a copy of the fully executed Employment Agreement." Dkt. # 12-1, at 3; id. at 8. Protec states in its complaint in the separate case filed in the Southern District of Florida that "[a]lthough the Agreement attached hereto does not contain Labadie's signature, Labadie has previously acknowledged (in writing) that he possesses the version of the Agreement containing his signature." Dkt. # 12-1, at 23 n.1. However, the alleged writing is not attached as an exhibit to defendants' motion to transfer venue in this case or the complaint in the other case.

The Court finds that there is conflicting evidence as to whether the parties agreed to the venue provision, and this conflict should be resolved in favor of plaintiff, the non-moving party, when ruling on a motion to transfer venue or dismiss for improper venue. Murphy, 362 F.3d at 1138; Just Film, Inc. v. Merchant Servs., Inc., 2010 WL 4923146, *7 (N.D. Cal. Nov. 29, 2010); Colonna's Shipyard, Inc. v. City of Key West, Florida, ___ F. Supp. 2d ___, 2010 WL 3418403 *1 (E.D. Va. Aug. 27, 2010); Webb Candy, Inc. v. Walmart Stores, Inc., 2010 WL 2301461, *4 (D. Minn. June 7, 2010). Defendants are essentially asking the Court to make a credibility determination and reject plaintiff's affidavit stating that he did not sign the employment agreement.

However, there is conflicting evidence and this conflict should be resolved in favor of the non-moving party. If the Court accepts plaintiff's statement as true, there is evidence that the venue provision was not part of the parties' oral agreement. Although the Tenth Circuit has not addressed the issue raised by the parties, other federal courts have uniformly found that one party to an oral contract may not unilaterally add a forum or venue selection clause merely by including such a provision in a subsequent writing. Chateua des Charmes Wines Ltd. v. Sabate USA Inc., 328 F.3d 528, 531 (9th Cir. 2003); Solae, LLC v. Hershey Canada, Inc., 557 F. Supp. 2d 452, 458 (D. Del. 2008); BTC-USA Corp. v. Novacare, 2008 WL 2465814, * 3-4 (D. Minn. June 16, 2008); Steel Dynamics, Inc. v. Big River Zinc Corp., 2006 WL 1660599, * 7-8 (N.D. Ind. June 9, 2006). The Court may not speculate that plaintiff has a fully executed copy of the employment agreement and reject his evidence at this stage of the case. Based on the record before the Court, the Court finds that the venue provision was not part of the parties' original agreement and the venue provision in the written employment agreement may not be enforced against plaintiff. Thus, defendants' motion to transfer venue or dismiss for improper venue should be denied.

**B.**

Defendants Protec Energy, Antod, Greenberg, and Garner argue that the Court lacks personal jurisdiction over them, and plaintiff's claims against them should be dismissed. Dkt. # 12, at 11-13. Plaintiff responds that Garner and Greenberg purposefully directed their actions toward Oklahoma and, at a minimum, the effects of their conduct were felt by plaintiff in Oklahoma. Dkt. # 18, at 19. He also argues that Protec Energy and Antod are the alter egos of Greenberg and Garner, and the Court may consider Greenberg's and Garner's contacts with Oklahoma when determining if it has personal jurisdiction over Protec Energy and Antod.

To demonstrate the existence of personal jurisdiction over a nonresident defendant in a diversity action, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Intercon, 205 F.3d at 1247 (quoting Burger King, 471 U.S. at 472). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."

12

Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)).

Plaintiff recognizes that Greenberg and Garner were acting in their capacities as officers or employees of Protec, but argues that this case falls within an exception to the general rule that the contacts of an employer may not be attributed to employees for the purpose of obtaining personal jurisdiction over an employee. Dkt. # 18, at 21-22. The general rule is that a court does not obtain personal jurisdiction over a corporate employee based on the corporation's contacts with the forum state. Ten Mile Indus. Park v. Western Plains Servs. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987); Wegerer v. First Commodity Corp. of Boston, 744 F.2d 719, 727 (10th Cir. 1984). However, the Supreme Court has held that it does not violate due process to subject an employee to personal jurisdiction if he was the primary participant in conduct constituting a tort by his employer and the employee's intentional and tortious conduct was directed at the forum state. Calder v. Jones, 465 U.S. 783, 789-90 (1984). Courts have found that a defendant acting only in the capacity of a corporate employee may be subject to personal jurisdiction based on the corporation's contacts if the employee was instrumental in perpetrating fraud against the plaintiff. Jayhawk Capital Management, LLC v. LSB Indus., Inc., 2009 WL 3766371, *19 (D. Kan. Nov. 10, 2009); Shotwell v. Crocs Retail, Inc., 2007 WL 2446579, *3 (N.D. Okla. Aug. 23, 2007). However, the plaintiff must also allege that the employee is personally liable to the plaintiff, and personal jurisdiction over a corporate officer will not be present if the officer has no liability apart from that of the corporation. All American Car Wash, Inc. v. Nat'l Pride Equipment, Inc., 550 F. Supp. 166, 169 (W.D. Okla. 1981).

The complaint contains sufficient allegations that Greenberg and Garner intentionally directed their activities toward Oklahoma and that they may be individually liable to plaintiff, and the Court finds that it may exercise personal jurisdiction over them. Plaintiff is a resident of Tulsa and he alleges that Greenberg and Garner recruited him to join Protec using false promises and inducements of better pay and employee benefits. Dkt. # 2, at 3-4. He claims that Protec recruited plaintiff to establish an office in Tulsa in an attempt to increase Protec's business in Oklahoma and other states. Id. at 3. Plaintiff alleges that Protec never intended to follow through on the financial terms contained in the parties' agreement and Greenberg and Garner knew this when they attempted to recruit plaintiff to work for Protec. Id. at 13. After beginning his employment with Protec, plaintiff claims that Protec failed to pay him under the terms of the parties' agreement, but Greenberg and Garner repeatedly assured plaintiff that the financial conditions of the employment agreement would be honored. Id. at 5-8. Plaintiff claims that Greenberg's and Garner's assurances were fraudulent and, instead of paying plaintiff's bonuses and commissions, they were diverting money from Protec for their own personal benefit. Id. at 9. All of these contacts were directed to plaintiff in Oklahoma. Plaintiffs asserts, inter alia, two fraud claims, a civil RICO claim, and claims of civil conspiracy, intentional infliction of emotional distress, and slander against Greenberg and Garner. Although plaintiff alleges that Greenberg and Garner were acting in their corporate capacity, he seeks to hold them individually liable for their conduct and asserts claims directly against Greenberg and Garner. The allegations of the complaint are sufficient to show that Greenberg and Garner purposefully directed their actions toward an Oklahoma resident and should have been aware that the effects of the conduct would be felt in Oklahoma. See Calder, 465 U.S. at 789-90 (employees of the National Enquirer could anticipate being haled into court in California

when they wrote an article about a California resident and should have anticipated that the effects of their conduct would be felt in California). Plaintiff has made a prima facie showing that the Court has specific personal jurisdiction over Greenberg and Garner.

Plaintiff argues that the Court has personal jurisdiction over Protec Energy and Antod based on his allegations that these entities are the alter egos of Greenberg and Garner. Plaintiff's complaint contains allegations that Greenberg and Garner established Protec Energy and Antod "in whole or in part for the purpose of hiding, diverting, and misappropriating assets of Protec and to hinder, delay, and defraud creditors, including Labadie," and Garner and Greenberg "abuse[d] the corporate form" when creating Antod and Protec Energy. Dkt. # 2, at 1-2, 32. Plaintiff is correct that the contacts of an individual may be attributed to a corporate entity that is allegedly the alter ego of the individual. See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008); Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002); Qassas v. Daylight Donut Flour Co., LLC, 2010 WL 1816403, *4 (N.D. Okla. May 3, 2010). Oklahoma law permits a court to disregard the corporate entity and pierce the corporate veil if the corporation is used "(1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime." King v. Modern Music Co., 33 P.3d 947, 952 (Okla. Civ. App. 2001) (quoting In re Estate of Rahill, 827 P.2d 896, 897 (Okla. Civ. App. 1991)). If a corporation is used for any of these improper purposes, a court may disregard the corporate entity and impute liability to the persons responsible for the acts of the corporation. Id. The Tenth Circuit has determined that a corporation may be deemed the alter ego of an individual as a matter of Oklahoma law if "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the

corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham." Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1018 (10th Cir. 1990).

Plaintiff has adequately alleged that Antod and Protec Energy are the alter egos of Greenberg and Garner for the purpose of defeating a motion to dismiss under Rule 12(b)(2). At this stage of the case, plaintiff must simply allege a prima facie case that the Court has personal jurisdiction over each defendant and this has been described as a "very minimal burden." Home-Stake, 907 F.2d at 1017-18; Ireland v. Dodson, 250 F.R.D. 538, 543 (D. Kan. 2008). Plaintiff alleges that Greenberg and Garner failed to treat Antod and Protec Energy as separate corporations and, instead, used Antod and Protec Energy to hide Protec's assets. Dkt. # 2, at 32. He states that:

> 173. Upon information and belief, Garner and Greenberg abused the corporate form by converting corporate assets for personal use and commingling said corporate assets with personal assets with no attempt to distinguish proper ownership, no formal documentation of loans, and no charging of interest on loans, and otherwise treated the corporation as the alter-ego of themselves such that the corporate veil should be pierced and Garner and Greenberg should be held personally liable.
>
> 174. Additionally, Garner and Greenberg established entities such as Antod and Protec Energy and possibly others that, upon information and belief, are being used to divert Protec's corporate assets for the purpose of hindering, delaying or defrauding Labadie and other creditors of Protec, Garner and Greenberg, such being an abuse of corporate form. Accordingly, Labadie is entitled to an order of the Court determining that the corporate veil should be pierced and Antod and Protec Energy should be held liable for the satisfaction of any judgment to which Labadie is entitled.

Id. Under Home-Stake, allegations that a corporation fails to maintain its own books and finances and that individual finances were intermingled with corporate finances are adequate for jurisdictional purposes for a court to exercise personal jurisdiction over a non-resident defendant. 907 F.2d at 1018. Plaintiff has alleged that corporate formalities were not observed and Greenberg and Garner used Antod and Protec Energy to hide Protec's assets from creditors. These allegations

are sufficient for jurisdictional purposes to support a prima facie case that piercing of the corporate veil may be appropriate, and the Court finds that Greenberg's and Garner's contacts with Oklahoma should be attributed to Antod and Protec Energy.

Even though the Court has found that it has personal jurisdiction over each defendant, the Court must also consider whether the assertion of personal jurisdiction over defendants "comport[s] with 'fair play and substantial justice.'" Trujillo, 465 F.3d at 1221 (quoting Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1359 (10th Cir. 1990)). The Court must consider five factors to determine if the exercise of personal jurisdiction over defendants would be reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Id. (quoting Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1279-80 (10th Cir. 2005)). The Tenth Circuit has stated that a defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" and "[s]uch cases are rare." Rusakiewicz v. Lowe, 556 F.3d 1095, 1102 (10th Cir. 2009). Defendants argue that the venue provision in the written employment agreement constitutes a compelling fact demonstrating that it would be unreasonable for the Court to exercise jurisdiction over them. However, the Court has rejected defendants' argument that plaintiff agreed to litigate claims in Florida because there is conflicting evidence as to whether plaintiff signed the written employment agreement offered by Protec. The Court will consider defendants' argument that the five factors strongly favor dismissal of this case, but the venue provision in the written employment agreement will not be a factor in the Court's decision.

As to the first factor (burden on the defendant), defendants argue that each defendant is a resident of Florida and it would impose an unreasonable burden on them if they were required to litigate in Oklahoma. Dkt. # 12, at 15-16. Plaintiff responds that defendants actively solicited him to work for Protec and directed their activities toward an Oklahoma resident, and part of the purpose of hiring plaintiff was allegedly to establish an office in Tulsa. While defendants would have some additional burdens by litigating in Oklahoma, plaintiff's allegations suggest that it would not be unfair or unreasonable to require defendants to defend against plaintiff's claims in this Court. The second factor (the forum state's interest in the lawsuit) does not clearly favor defendants. Defendants argue that this Court must apply Florida law under the terms of the written employment agreement, but the Court has determined there is conflicting evidence concerning the enforceability of the written employment agreement. A choice of law issue may arise as the case progresses, but the written employment agreement does not establish that the Court will be required to apply Florida law. Thus, Oklahoma law may apply to this case and the existence of a potential choice of law issue does not show that the forum state lacks an interest in resolving a contract dispute involving one of its residents. Concerning the third factor (plaintiff's interest in a convenient forum), defendants argue that Florida would be a more convenient forum for many of the parties and potential witnesses, and this favors transfer of this case to the Southern District of Florida. Dkt. # 23, at 9. Defendants have confused the issues of personal jurisdiction and transfer of venue, and the mere fact that Florida may be a more convenient forum for defendants does not render this Court's exercise of personal jurisdiction over defendants unreasonable. Plaintiff states that he and other witnesses are located in Oklahoma and, while Oklahoma may be inconvenient for some parties and witnesses, the Court finds on the existing record that this factor does not favor either plaintiff or defendants.

Defendants' argument concerning the fourth factor (efficiency of the interstate judicial system) is also based on their argument that Florida law applies to plaintiff's claims, and defendants also argue that failure to dismiss this case will result in piecemeal litigation. Dkt. # 12, at 17. Plaintiff is correct that Protec could have filed the claims asserted in its separate case as counterclaims in this case, and Protec's own conduct is largely responsible for any inefficiency in the judicial system as a whole. Dkt. # 18, at 29. Defendants concede that the fifth factor (shared interests of the several states) favors providing an Oklahoma forum for an Oklahoma resident to bring claims against his employer. Dkt. # 12, at 18. Defendants claim that the existence of a forum selection clause outweighs this consideration, but the Court has not found clear evidence that plaintiff agreed to the forum selection clause. The fifth factor clearly favors plaintiff. Considering all five factors, the Court finds that defendant has not presented a compelling case that it would offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over defendants, and defendants' motion to dismiss for lack of personal jurisdiction should be denied.

**IT IS THEREFORE ORDERED** that Defendants' Special Motion to Transfer Venue, or in the Alternative, Motion to Dismiss for Lack of Personal Jurisdiction; and Brief in Support (Dkt. # 12) is **denied**.

**DATED** this 4th day of January, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

19